### RIGHTS OF REMAINDERMEN.

Common Pleas Court of Hamilton County.

IRA P. CARNES ET AL v. CAREY E. MCAFEE, ADMINISTRATOR, ET AL.

Decided, March 14, 1911.

*Wills—Contingent Remainder—Vesting of Rights—Remaindermen Not Estopped from Questioning Claims of Those who Dealt with the Life Tenant—Benefits Accruing to Remainderman from Contract Made by Life Tenant—Title to Certificates of Stock.*

1. Under a will which gives, devises and bequeaths "all my property, both real and personal, of which I may die possessed to my beloved wife, M. J. A., during her natural life, and at her death to be distributed in accordance with the laws of the state," the remainder is a contingent remainder which vests among those who are heirs at law of the testator at the time of the death of the life tenant.

2. The affidavit filed in such a case by the widow in lieu of a final account, and published as notice of a final account, was not notice to anybody of a proceeding for a construction of the will or determination of the rights of the devisees under the will; and the action of the court in confirming the account was not intended to and did not have the effect of determining who were the distributees under the will or under the law.

*Maxwell & Ramsey* and *R. E. Eastman,* for plaintiffs.
*Kent W. Hughes* and *Thomas Hogsett,* contra.

SWING, J.

After hearing the evidence and oral arguments in this case, I read the briefs of counsel with care and have reflected upon the case, and I had intended to write fully the views I have taken of the issues involved, but for want of time have determined to merely state my conclusions.

First. I shall state my construction of the will of Frederick Agerter, deceased.

The important provision in the will is as follows:

"I give, devise and bequeath all my property, both real and personal of which I may die possessed, to my beloved wife Martha Jane Agerter, during her natural life, and at her death to be distributed in accordance with the laws of the state."

I think that by the terms of the will quoted, Martha Jane Agerter took an estate in all the property real and personal, of which Frederick Agerter died possessed, for her natural life, the remainder at her death to be divided according to the statute of descent and distribution of this state, among such persons as should then sustain to the said Frederick Agerter the relation of heirs at law. I think the remainder was contingent, vesting at the time of the distribution at the death of the .widow. I think this conclusion is according to the decision of our Supreme Court in the case of *Barr* v. *Denney*, 79 O. S., 358. It is said in the syllabus:

"In such case the direction to the executor to pay *or to distribute* to the testator's legal heirs" confers a contingent interest which does not vest until the period of distribution; and the direction "to distribute equally to my legal heirs" is equivalent to a direction to make distribution in accordance with the statutes providing for descent and distribution."

The wills in that case and in this, I think, are substantially alike.

Second. I am of opinion that the affidavit filed by Mrs. Agerter as executrix of her husband's estate, with the Probate Court of Allen County in 1885 in lieu of a final account, in which she stated that the debts had all been paid and that she was "the widow and sole legatee," which was advertised and afterwards confirmed in the manner of final accounts by the probate ·court, did not affect the distribution to be made, and that the judgment of the probate court in confirming the account did not amount to a construction of the will binding upon the contingent remaindermen. I do not think the notice of the filing of the affidavit, published as a notice of a final account, was notice to anybody of a proceeding for a construction of the will or determination of the rights of the devisees under the will, and I do not think the judgment of the court in confirming the account was intended

to have or could have the effect of determining who were the dis-
tributees under the will or under the law.   I do not think it was
in the power of the probate court in that proceeding and man-
ner to determine such things.

Third.   I think the plaintiffs in their dealings with Mrs.
Agerter in relation to the stock left by Frederick Agerter, de-
ceased, in the Lima Machine Works and the stock issued in lieu
thereof to Mrs. Agerter in the Lima Locomotive & Machine Com-
pany, knew or should have known of her title and of the right of
the remaindermen under the will of Frederick Agerter, deceased.
They dealt with her usually, though not uniformly, as executrix.
But at any rate, I think their dealings with her as to the stock
could bind her and her interest only.

I do not think that it was in the power of Mrs. Agerter to bind
the contingent remaindermen, or the remaindermen even if they
should be held not contingent, by the contract involved in this
case, entered into by her with the plaintiffs, by which plaintiffs
were to have the option upon her death to take the stock held by
her at par.

Fourth.   There is no evidence of any fraud or undue influence
practiced by the plaintiffs or any of them upon Mrs. Agerter to
induce her to enter into the contract involved in this case.   The
transaction was perfectly fair on the part of the plaintiffs to-
ward her, and all that was done in making the contract and in
pursuance of it, turned out to be greatly to the advantage of
Mrs. Agerter and of the remaindermen.   If Mrs. Agerter had
been the owner of the whole title to the stock, I would see no
equitable reason to interfere with the carrying out of the con-
tract made by her.   Mrs. Agerter and her children in her life-
time received so much in the way of profits and benefits from the
arrangement that was made, and the remaindermen now are so
benefitted by all that was done, that I would be very glad, if I
could see my way to do it according to law, to hold the contract
binding upon the remaindermen, and to decree to the plaintiffs
the right to take the stock at par and interest according to their
agreement, entered into with Mrs. Agerter.

Fifth.   It is claimed that the remaindermen are estopped now
because of benefits received by them through Mrs. Agerter and

because of the lapse of time, and under all the circumstances of the case, to question the rights of the plaintiffs under the contract. But if the remaindermen were contingent, as I think they were, I can see no ground upon which they can be said to be estopped; nor even if they were not contingent, do I think there is sufficient ground to decree them to be estopped. Even if they had had full knowledge of all that was done and of their rights, I do not think they were bound to interfere with what was being done before the death of Mrs. Agerter, and especially if the remaindermen were contingent so that it could not be known who they would be until the death of Mrs. Agerter. It would seem very clear that there could be no estoppel.

Sixth. I am of opinion that Carey E. McAfee as administrator *de bonis non* with the will annexed of said Frederick Agerter, deceased, is entitled to the possession of the stock involved in this case for purposes of distribution. I think this is in accordance with the decision in the case of *Barr* v. *Denney, supra,* in which case the administrator *de bonis non* with the will of James Barr annexed, began the proceeding to determine the true contruction of the will in order that it might be known how he should distribute the estate. I think the title to the stock in question was in him and could only be transferred to others through him.

I have thought much about this case and have endeavored to find some ground upon which the contract involved might be enforced against the remaindermen, for the reason that it was fairly entered into, I think, and turned out to be so profitable an arrangement for all interested in the estate of Frederick Agerter, deceased. It must be said, however, that if it had not been profitable, but had been disastrous, the remaindermen who now profit by it would have lost by it; but the fundamental principle that governs the case, I think, is that it was not in the power of Mrs. Agerter and the other parties to the contract that was entered into to bind the remaindermen as to the estate of Frederick Agerter, deceased.

This decision does not apply to twenty-two shares of stock purchased by Mrs. Agerter with her own money. Those shares, part of her five hundred shares, plaintiffs are entitled to take at

par under the agreement. As to seventy-eight other shares, which with said twenty-two made up the last one hundred shares issued to Mrs. Agerter, if it could be shown to me from the evidence that they were paid for with dividends to Mrs. Agerter, I would hold them also subject to the right of plaintiffs to take them under the agreement. But my understanding is that they were not so paid for, but were just issued to her as what counsel for plaintiffs says "may be called bonus stock." If any further light can be given me as to the seventy-eight shares, I shall be glad to consider further.

Otherwise, a decree may be entered in accordance with the conclusions I have stated.

## On Re-Hearing.

Upon re-hearing after I had decided the case in a former opinion, upon application of counsel for the plaintiffs, a reargument was had, particularly upon the fourth proposition in the brief of counsel for plaintiffs, to-wit:

That if the will created a contingent estate as claimed by defendants, then Mrs. Agerter as trustee for that interest was clothed with a legal title, with power to sell or otherwise dispose of the property. It was claimed by counsel for the plaintiffs that if the interest of the remaindermen was contingent during the life of Mrs. Agerter to be distributed at her death according to the statute of descent and distribution, there was during the life of Mrs. Agerter a trust; that she became the trustee during her lifetime of the estate and that her administrator would succeed to that trust upon her death, and that the trust would terminate only upon final distribution by her successor in the trust in accordance with the laws governing the distribution of intestate estates. It was further claimed that as such trustee, Mrs. Agerter was empowered by the law to sell the stocks involved in this case and that although she sold them without an order from any court, yet if she acted in good faith and with discretion, no person could be injuriously affected, and that her action would be valid and binding upon the remaindermen. This contention was argued with a great deal of ability

and force in oral argument, in addition to the statement of it made in the brief of counsel formerly submitted. I have considered the contention with much care, but am not able to reach the conclusion that it is correct in this case.

I am of opinion that Mrs. Agerter was entitled to the possession of the stock during her lifetime, and might be said to have held it in some sense as a trustee for the contingent remaindermen, yet that she was not a trustee with general power to dispose of the estate of the remaindermen in any way that she might see fit. I do not mean to say that she could not under any circumstances have made any disposition of the stocks in her hands, nor that it would have been necessary under all circumstances to the validity of the disposition that it should have been made by an order of the court. She might under some circumstances have disposed of it without an order of court, acting in good faith and with discretion and in the interest of the remaindermen as well as of herself. She did dispose of the stock in the old company, the Lima Machine Works, exchanging it for stock in the new company, the Lima Locomotive & Machine Company, the old company going out of business and the stock in the new company being the only thing of value held by her for herself and the remaindermen, and she did that in good faith and with discretion, and it can not now be disturbed. It would not now be practicable or possible to undo and set aside that exchange of stock. She might, if she had seen fit to do so, have sold the stock in the old company outright for cash, and after the sale so made and after conditions had changed the sale, fairly made in the interest of herself and the remaindermen, would be upheld, and especially would it necessarily be upheld when nothing else could be done under existing circumstances. But I am not able to see that the contract into which she entered with the plaintiffs and which is involved in this case, can be regarded as a sale or disposal of the stock in such manner as I have described and as might be upheld under the circumstances. When Mrs. Agerter made the exchange of stock, the stock in the new company became a part of the estate which she was entitled to hold, and from which she was entitled to receive an income during her lifetime. She did not

undertake to sell it in her lifetime. She had not received the stock from the plaintiffs, but from the new corporation in exchange for the stock which she had held in the old corporation. If she had received the stock from the plaintiffs themselves, for considerations, making the contract in all respects binding between herself and the plaintiffs, the remaindermen might now be bound by such contract and all its terms; but without having received the stock of the new corporation from the plaintiffs she entered into a contract with them, they being also stockholders in the new corporation, by which she attempted to give them an option to purchase after her death the stock held by her for life, with the remainder to contingent remaindermen at her death, at a price which might be, and turned out to be, much less than the value of the stock at her death. I think it clear that she undertook to bind the remaindermen after her death to permit the plaintiffs at their option to take the stock in which she should have ceased to have any interest by reason of her death, at its par value. It was this that I think was beyond her power.

Counsel for plaintiffs in argument, with much force and ability, urged that if the stock had been held during the lifetime of Mrs. Agerter by some other person, as, for instance, the Union Savings Bank &'Trust Company, for the benefit of Mrs. Agerter during her life, to be distributed at her death according to the statute of descent and distribution, such trustee could have sold the stock in her lifetime, binding the remaindermen, and that if it could have done that, it could have given an option for the sale of it at a fixed price after her death, which would in like manner bind the remaindermen.

With this contention I am not able to agree. Although such trustee might, under some circumstances, acting in good faith and with discretion, have sold the stock so as to bind the remaindermen, I can not think that it would have been in the power of such trustee to have given such option so as to bind the remaindermen after the death of the life tenant, and when there would have been nothing else to do but for the trustee to distribute the estate. The estate would have become the property of the remaindermen at the death of the life tenant, with no

other power in the trustee but the power to distribute it. The giving of the option was not a sale. It did not bind the plaintiffs to purchase. If the stock was not worth par, it is not likely that they would purchase. It was giving the plaintiffs an option to purchase the stock after the title in the remaindermen had become vested, regardless of their interest. The case supposed by counsel, and it is so stated by him, assumes that the distribution of the estate after the death of the life tenant would be made by the trustee, and in like manner it is claimed by him that in the present case, Mrs. Agerter being the trustee, the distribution should be made by the administrator of her estate.

With this contention also I am compelled to disagree. I think it clear that the remaindermen take not by descent from Mrs. Agerter, but by the terms of the will of Frederick Agerter, deceased, to such persons as should then be the legal distributees of his estate—the estate left by him—and if the remaindermen were contingent, the distribution must be made by an administrator *de bonis non* of the estate of Frederick Agerter, deceased. To be sure, the remaindermen are not designated by name or class in his will, but it is by his will that Mrs. Agerter took the life estate for her own lifetime, and by his will that at her death it was to be distributed according to the laws of descent and distribution to the then proper persons; that is, that his estate was to be so distributed.

I think these distinctions between the case as it is and the contentions of counsel which I have stated, must be correct. If so, my former holding that it was not in the power of the life tenant to make a contract for the exercise of an option by the plaintiffs after her death, and after her interest had ceased. which would bind the remaindermen of the estate of Frederick Agerter, deceased, would seem to be correct.